IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| LILLIAN L. MOSELY, individually and in behalf of her minor son MELVIN JACKSON, | ) ) ) |
| Plaintiff, | ) ) |
| vs. | ) ) Case No. 03 C 4915 |
| CITY OF CHICAGO; BOARD OF EDUCATION OF THE CITY OF CHICAGO; SHARON GRISSETT; LAURA LOZADA; MRS. ATKINS; and DEAN THOMPSON, | ) ) ) ) ) |
| Defendants. | ) |

## MEMORANDUM OPINION AND ORDER

MATTHEW F. KENNELLY, District Judge:

Lillian Mosely, acting on behalf of herself and her minor son Melvin Jackson, has sued the City of Chicago, the Chicago Board of Education, and four Board employees under 42 U.S.C. § 1983 and state law. The individual defendants have moved to dismiss Mosely's amended complaint for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6). For the reasons stated below, the Court dismisses Mosely's claims made on Melvin's behalf but denies defendants' motion with respect to her claims made on her own behalf.

### Introduction

On July 16, 2003, Mosely filed a *pro se* suit against a defendant she named as "Chicago Public Schools, Board of Education." She alleged that she had been elected "IASA chairperson" for Samuel Gompers Elementary School – a reference to the Improving America's Schools Act, Pub. L. No. 103-382 – but that school administrators froze her out from any role in the school

budgeting process during the 1999-2000 and 2000-2001 school years despite her efforts to be involved in that process, as her status as IASA chairperson apparently required. Mosely alleged that after she complained about this, school officials retaliated against her and her son Melvin, who was a student at the school, in September-November 2000. In fact, she alleged, an official had made an implied threat to do exactly that a few months earlier, in June 2000. As a result of the harassment, Mosely claimed, she suffered a nervous breakdown in June 2000.

On September 16, 2003, the Board of Education filed an initial motion to dismiss, arguing that Mosely's claim was pled too vaguely to satisfy the requirements of the Federal Rules of Civil Procedure. The Court denied this motion on September 23, 2003 after making inquiry of Mosely in open court regarding the basis for her claim. The Court understood Mosely to be claiming that Melvin had been retaliated against for Mosely's exercise of her free speech rights under the First Amendment.

The Board then filed a second motion to dismiss on October 14, 2003, arguing that because Mosely had not alleged any retaliation after November 2000, her claim was time-barred because it was not filed within two years of that date. After Mosely filed a response and the Court heard oral argument, the Court dismissed the case in an order dated October 24, 2003. In that order, the Court again noted that it had previously understood Mosely's claim to involve the alleged retaliation against Melvin. At oral argument on October 20, 2003, however, Mosely had advised the Court that she had a separate lawsuit in which she had made a claim on Melvin's behalf. As a result, this Court stated that it would treat the present case as alleging only retaliation against Mosely herself. *Mosely v. Bd. of Educ.*, Case No. 03 C 4915, Order of Oct. 24, 2003 at 2.

The Court went on to say in its October 24, 2003 order that if the present suit were based on the alleged retaliation against Melvin, it would be time-barred, because the complaint alleged that retaliation had occurred, at the latest, in November 2000, well more than two years before she filed suit in July 2003. But setting that aside – based on the fact that the claimed retaliation against Melvin was the subject of a separate suit – the Court concluded that Mosely was left with nothing to go on that would sustain a claim. With regard to retaliation directed at Mosely herself rather than at Melvin, Mosely claimed only that she was frozen out of the budgetary process at the school; the Court concluded that this was not sufficiently adverse to amount to actionable retaliation for her exercise of her First Amendment rights. The Court therefore dismissed the case. *Id.*

Mosely appealed, and the Seventh Circuit appointed counsel to represent her. The appeal was consolidated with Mosely's separate appeal from another judge's dismissal of her separately-filed suit on Melvin's behalf. A little over two years after this Court had dismissed Mosely's case, the Seventh Circuit reversed both dismissal orders. *Mosely v. Bd. of Educ. of City of Chicago*, 434 F.3d 527 (7th Cir. 2006). With regard to the present case, the court concluded that the actions Mosely alleged did amount to actionable retaliation. On the limitations issue, the court of appeals stated as follows:

> Apart from the fact that the statute of limitations is . . . an affirmative defense, there are other problems with the district court's conclusion that her retaliation action was untimely. Even if the incidents relating to Melvin occurred more than two years before she filed this case, Mosely's complaint recounted other incidents of harassment that took place within the two-year time limit. In response to the court's question, "through what period of time do you contend that your son was being harassed," Mosely responded "up until I took him out the school." That date was September 18, 2001. To the extent that her claim is based on incidents that occurred between July 16, 2001, and September 18, 2001, it is

3

> not time-barred, because she filed her complaint on July 16, 2003.
>
> We do not exclude the possibility that discovery may reveal that Mosely is unable to prove that acts of harassment took place within that critical window of time. She has alleged, however, that they did, and that is enough for purposes of Rule 12(b)(6).

*Id.* at 535.

Following remand, the attorney who had been appointed to represent Mosely on appeal remained in the case in an effort to settle it. When this proved unsuccessful, that attorney withdrew, and Mosely (at her request) was given time to retain new counsel. Retained counsel first appeared on Mosely's behalf in September 2006. Counsel filed an amended complaint about a month later, with the plaintiff identified as Mosely "individually and in behalf of her minor son, Melvin Jackson," and naming as defendants the City of Chicago, the Board, and four individuals: Sharon Grissett, Laura Lozada, "Mrs. Atkins," and Dean Thompson. The amended complaint identified Grissett as the principal of Gompers during the relevant period; Lozada and Atkins as teachers at Gompers; and Thompson as a Board employee working in administration.

In late October 2006, the Board filed a motion to dismiss; the other defendants had not yet been served with summons. It argued that Mosely's claims on her own behalf were time-barred based on the allegations in the amended complaint and that her claims on Melvin's behalf were likewise time-barred or alternatively were barred by the doctrine of claim preclusion based on the determination by the judge in the previous separately-filed case that administrative exhaustion requirements had not been met. In November 2006, the Court set a briefing schedule on the Board's motion. Mosely's response brief was somewhat delayed. The Court ultimately denied the motion to dismiss on March 12, 2007, concluding that the claim preclusion argument

was lacking in merit, and declining to dismiss the case on limitations grounds, because Mosely had invoked the "continuing violation" doctrine, and the Court was unable to determine the matter on a Rule 12(b)(6) motion. *Mosely v. City of Chicago*, No. 03 C 4915, Order of Mar. 12, 2007 at 2. The Board thereafter answered the complaint.

At the next court date, in late March 2007, the Court ascertained that the individual defendants had not yet been served with summons. The Court extended the time for service more than once, and all the defendants were eventually served by June 2007. They filed motions to dismiss in late July 2007.

Starting in or around May 2007, a pattern developed of inaction by plaintiff's retained counsel, including more than one missed court date. In October 2007, plaintiff's attorney moved to withdraw, saying that Mosely owed her money and advising the Court that this had been the reason for her earlier inaction. The Court granted counsel's motion and, after Mosely was unable to retain new counsel, determined to appoint counsel for her. New counsel first appeared in late November 2007. The motion to dismiss is now fully briefed and ready for decision.

The Board has answered Mosely's amended complaint. In their motion to dismiss, the individual defendants argue that the amended complaint, filed in October 2006, does not relate back to the date the lawsuit was originally filed and that as a result the claims against them are time-barred. They argue alternatively that even if the amended complaint relates back, the suit was time-barred when it was first filed. Finally, they argue that Mosely's claims on Melvin's behalf are barred due to failure to exhaust administrative remedies. (The City of Chicago, named as a defendant, has never been served; the claims against the City are dismissed without prejudice pursuant to Federal Rule of Civil Procedure 4(m).)

## Discussion

**1.     Relation back**

The first question involves relation back. Federal Rule of Civil Procedure 15(c)(1) provides in relevant part that

> [a]n amendment to a pleading relates back to the date of the original pleading when:
>
> . . .
>
> (B)  the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out–or attempted to be set out–in the original pleading; or
>
> (C)  the amendment changes the party or the naming of the party against whom a claim is asserted, if Rule 15(c)(1)(B) is satisfied and if, within the period provided by Rule 4(m) for serving the summons and complaint, the party to be brought in by amendment:
>
>> (i)  received such notice of the action that it will not be prejudiced in defending on the merits; and
>>
>> (ii)  knew or should have known that the action would have been brought against it, but for a mistake concerning the proper party's identity.

Fed. R. Civ. P. 15(c)(1). There is no question that the requirements of Rule 15(c)(1)(B) have been satisfied, as the amended complaint asserts claims arising out of the same conduct set out in Mosely's original *pro se* complaint. Because new parties were added via the amendment, however, the critical question is whether the other criteria of Rule 15(c)(1)(C) have been satisfied. The individual defendants argue that there was no "mistake" concerning the proper parties' identity within the meaning of Rule 15(c)(1)(C)(ii) and that they did not have "notice" within the meaning of Rule 15(c)(1)(C)(i).

Mosely argues that she made a mistake within the meaning of the Rule because, as a *pro se* plaintiff, she did not realize that suing the Board was insufficient and that she also (or, perhaps, instead) had to sue the individual Board employees involved. Defendants argue that this is not a mistake within the meaning of the Rule. They rely on a recent Seventh Circuit case in which that court said that Rule 15(c)(1) "'permits an amendment to relate back only where there has been an error made concerning the identity of the proper party and where that party is chargeable with knowledge of the mistake, but it does not permit relation back where . . . there is a lack of knowledge of the proper party.'" *Hall v. Norfolk Southern Ry. Co.*, 469 F.3d 590, 596 (7th Cir. 2006) (quoting *Wood v. Worachek*, 618 F.2d 1225, 1225 (7th Cir. 1980)).

Mosely relies on *Woods v. Indiana Univ.-Purdue Univ. at Indianapolis*, 996 F.2d 880 (7th Cir. 1993), in which the plaintiff argued that "mistakes" under Rule 15(c) include mistakes of law. *Id.* at 887. In that case, the plaintiff had sued a state university, which the district court found was immune under the Eleventh Amendment. The plaintiff then named individual officials of the university and argued that the amended complaint should relate back to the date suit was originally filed. The court concluded that the naming of the agency amounted to a mistake of law that triggered Rule 15(c) and remanded the case to the district court for further consideration of the "notice" issue under the Rule. *Id.* at 887-88. On that point, the court said that the notice requirement "serves as the means for evaluating prejudice" to the newly-named defendant. *Id.* at 888.

Not cited by either party, but relevant to the Court's analysis, is the Seventh Circuit's decision in *Donald v. Cook County Sheriff's Dept.*, 95 F.3d 548 (7th Cir. 1996). In *Donald*, a *pro se* prisoner in the Illinois Department of Corrections sued the Cook County Sheriff's

Department for damages regarding his treatment at the Cook County Jail. The district court dismissed the suit because the plaintiff failed to name the individual officials involved and there were no allegations sufficient to render the Sheriff's Department liable under 42 U.S.C. § 1983 and *Monell v. Dept. of Social Servs.*, 436 U.S. 658 (1978). The court of appeals reversed, relying in part on a document the plaintiff had filed that the court construed as an attempt to amend his complaint to name individual defendants, some of whom the plaintiff identified by name and some of whom he identified only by position and other identifying information. In discussing that document, the court effectively ruled that it amounted to an amendment of the complaint and that it related back under Rule 15(c). The court read *Woods* to hold that "[a] legal mistake concerning whether to sue an institutional or individual defendant brings the amendment within the purview of Rule [15(c)(1)], and public officials are charged with the knowledge that they are the appropriate targets of Section 1983 suits. Thus, if Donald had identified and served the appropriate individual defendants before the 120-day period expired, his amendment would easily have satisfied Rule 15(c)." *Id.* at 557 (citation omitted). The court remanded the case for further consideration of the "notice" issue under Rule 15(c), suggesting that the district court permit reasonable discovery to determine whether and when any of the individual officers allegedly responsible for the tort "'received such notice of [Donald's] suit against [the Sheriff's Department] as will avoid prejudice to the officers in maintaining the suit.'" *Id.* at 561 (quoting *Soto v. Brooklyn Correctional Facility*, 80 F.3d 34, 37 (2d Cir. 1996)).

In *Hall*, the Seventh Circuit's 2006 decision upon which defendants rely, the Court discussed both *Donald* and *Woods*. The court stated that the holding in *Donald* "has limited application . . . because the decision was reached in large part because of Donald's unique

8

impairments as a *pro se* prisoner who was 'precluded from conducting a precomplaint inquiry because of his incarceration.'" *Hall*, 469 F.3d at 597 (quoting *Donald*, 95 F.3d at 561). In *Hall*, by contrast, the plaintiff "has been represented by counsel throughout and obviously was not burdened by litigation impairments comparable to those of *pro se* prisoners." *Id.* The court noted that *Woods*, unlike *Donald*, did not involve an incarcerated *pro se* litigant, but it characterized *Woods* as "an outlier," noting that the court's more recent decisions "have not followed its reasoning and have instead coalesced around the narrower view of a Rule [15(c)(1)] 'mistake" which we trace back at least as far as *Wood*, 618 F.2d at 1229. We reaffirm and follow these more recent decisions regarding the scope of Rule [15(c)(1)]." *Hall*, 469 F.3d at 597-98 (citations omitted).

In the text of her original *pro se* complaint, Mosely mentioned, by name, three of the individual defendants – Lozada, Grissett, and Thompson – accusing them of having been involved in the alleged freeze-out and other retaliation. *See* Compl. ¶¶ 6, 9, 10, 11 & 12. She did not mention defendant Atkins by name, but it is likely that she was referring to conduct that she attributes to Atkins, allegedly Melvin's teacher, when she referred to write-ups and suspensions imposed on Melvin. *See id.* ¶¶ 15, 16, 18 & 20.

In failing to name these persons as defendants in the caption of her original complaint, Mosely made a mistake similar to the one made by the represented litigant in *Woods* and identical to the one made by the *pro se* prisoner in *Donald* – she did not understand that the law required her to sue the individuals responsible for the alleged wrongdoing.[1] If Mosely had been

---

[1] Though not argued by Mosely's counsel, it is at least possible that Mosely always intended to sue the persons she identified in her original complaint but did not understand that she should put their names in the caption of the suit.

9

represented at the time of her original complaint, under *Hall*'s limitation of *Woods*, her mistake would not fall within the scope of Rule 15(c)(1). By contrast, if she had been *incarcerated* at the time, her mistake would fall within the scope of the Rule, given *Hall*'s apparent reaffirmation of *Donald*. But Mosely falls somewhere between the represented litigant in *Woods* and the incarcerated litigant in *Donald*: she was unrepresented, but she was not incarcerated.

The Court concludes that Mosely, as an unrepresented *pro se* litigant, falls within the limited category of litigants who, even after *Hall*, may be considered to have made a mistake within the meaning of Rule 15(c)(1) when they sue an institutional defendant rather than named individuals who work for that institution. Though Mosely was not incarcerated, she suffered from the same disadvantages comparable to those of the plaintiff in *Donald* – lack of knowledge of the law, and lack of readily available access to sources that would have disclosed what the law required in this regard (indeed, as an incarcerated prisoner, Donald likely had a law library at hand, probably with attendants who could point him in the right direction; in some ways it can be more difficult for an unincarcerated *pro se* litigant to access such materials). The Court also notes that had it dealt properly with the case in the first instance – that is, by declining to dismiss it and by appointing counsel – the problem likely would have been cleared up almost immediately. For these reasons, the Court concludes that Mosely, like the plaintiff in *Donald*, has shown a mistake within the meaning of Rule 15(c)(1)(C)(ii).

The other issue involves whether the "notice" requirement of Rule 15(c)(1)(C)(i) has been met. In that regard, the Court believes the appropriate course is the one prescribed by the Seventh Circuit in *Donald*: allowing discovery to proceed so that the parties can produce and

obtain evidence concerning the notice issue, and then revisiting that point later in the case.[2]

## 2. Statute of limitations

The individual defendants argue that even if the amended complaint relates back to July 16, 2003, the date Mosely filed her original complaint, it is time-barred. Though the Court has a hard time seeing how this argument can be distinguished from the one that the Seventh Circuit rejected on appeal, the Court nonetheless will address the point.

Each defendant contends that the last act that he or she is alleged to have committed occurred more than two years before July 16, 2003. Grissett and Atkins say that the last allegation identifying them involves an April 10, 2001 incident; Thompson says the last allegation about him involves May 6, 2000; and Lozada says the last allegation about her involves a May 2, 2000 incident. Each defendant argues that the statute started to run, as to a particular defendant, on the date of the last act he or she is claimed to have done.

The first problem with defendants' arguments – one that the court of appeals hinted at – is that the statute of limitations is an affirmative defense. *See* Fed. R. Civ. P. 8(c); *see also, e.g.*, *U.S. Gypsum Co. v. Indiana Gas Co.*, 350 F.3d 623, 626 (7th Cir. 2003). Because "[c]omplaints need not anticipate or attempt to defuse potential defenses," *id.*, it is generally inappropriate to dismiss a case on limitations grounds on a Rule 12(b)(6) motion (contrary to what this Court effectively did when Mosely's case was first filed).

Dismissal under Rule 12(b)(6) on limitations grounds still might be appropriate were it indisputable from Mosely's complaint that her claim is time-barred. *See, e.g., Small v. Chao*,

---

[2] The Court does not intend to limit discovery to this particular point. Because the Board has answered the complaint, it is appropriate for discovery to proceed generally, as the individual defendants almost certainly would be deposed even were they not named as defendants.

11

398 F.3d 894, 898 (7th Cir. 2005). But that is not the case. Among other things, Mosely essentially alleges that the defendants acted in concert in a campaign of harassment, and that this lasted until Melvin was removed from Gompers in September 2001, a date well within the two years preceding the filing of Mosely's original complaint. *See* Am. Compl. ¶¶ 26, 55, 60, 61 & 68. Given the potential applicability of the continuing violation doctrine, which applies to claims under § 1983, *see Heard v. Sheahan*, 253 F.3d 316, 318-20 (7th Cir. 2001), dismissal under Rule 12(b)(6) would be inappropriate.

### 3. Purported IDEA claims

The individual defendants, like the Board of Education in its earlier motion to dismiss, say that Mosely's claims made on behalf of Melvin amount to claims seeking relief under the Individuals with Disabilities Education Act (IDEA). With this as their premise, the defendants argue that the claims are barred because Mosely failed to exhaust IDEA-prescribed administrative remedies, a conclusion that Judge Suzanne Conlon reached on remand in Mosely's separately-filed *pro se* suit for Melvin that defendants contends is binding on Mosely here.

The Court first summarizes the allegations in the amended complaint relating specifically to Mosely's claims made on behalf of Melvin. She alleges that in March 2000, she learned he had, sometime earlier, been put into a class with students who exhibited "explosive personalities" – which Mosely characterizes as "special education classes" – without notice to her. Am. Compl. ¶¶ 56-57. Mosely also summarizes her allegations regarding defendants' retaliation for her activities as IASA chairperson, noting specifically that Melvin "was suspended several times . . . without a valid individual educational plan (IEP) in place." *Id.* ¶ 60. She alleges that due to

12

defendants' actions "and their failure to provide [Melvin] with a free and appropriate education in a suitable environment[, they] caused [Melvin] to suffer severe and extreme emotional distress and psychological damage" and deprived him of a high school diploma, which he otherwise would have received. *Id.* ¶¶ 63-64.

Mosely makes six claims on Melvin's behalf in her amended complaint. In Counts 1 and 2, Mosely alleges that by retaliating against her and Melvin based Mosely's exercise of her free speech rights, the defendants also violated Melvin's constitutional rights; in these claims, Mosely seeks an injunction directing the award of a high school diploma, as well as damages. In Counts 3 through 7, Mosely appears to seek only damages. In Count 3, she alleges that the defendants negligently failed to protect Melvin from harassment, causing him injury; in Count 4, she alleges that the defendants negligently failed to adequately train and supervise their employees and subordinates and that as a result, Melvin was deprived of the benefits of a high school education and suffered other injuries. Counts 5 and 6 are claims for intentional and negligent infliction of emotional distress upon Melvin.

The individual defendants contend that each of these claims amounts to a claim under the IDEA and that because Judge Conlon ruled on remand that Mosely had failed to exhaust IDEA-required administrative remedies, the claims are barred. When the Board made a similar argument in its motion to dismiss, the Court rejected it, stating as follows:

> The Board's claim preclusion argument is lacking in merit. It is clear from Judge Conlon's ruling granting summary judgment for failure to exhaust administrative remedies that the claims asserted in that case were limited to claims under the IDEA. *See* Mot. to Dismiss, Ex. C at 1. Claim preclusion applies if, and only if, the causes of action in the first and second suits are the same. *See, e.g., Tartt v. Northwest Community Hosp.,* 453 F.2d 817, 822 (7th Cir. 2006). Melvin has brought no IDEA claims in this case; rather, his claims are entirely based on the

13

First Amendment. The Board has cited no authority for the proposition that Melvin's First Amendment claims are part of the same cause of action as his IDEA claims. The single case cited by the Board, *Tartt,* says that two claims are the same for purposes of claim preclusion is they are based on the same or nearly the same factual allegations. The allegations that were material to Jackson's IDEA claim involve whether his placements in a school special education program met, among other things, IDEA's requirement to provide a "free appropriate public education," 20 U.S.C. § 1415(d)(1)(A), and whether IDEA's procedural requirements were met. The allegations material to Melvin's claim in the present case are that he was harassed, threats were made against him, police reports were filed against him, he was written up for misconduct at school, and he was suspended because of Ms. Mosely's exercise of her First Amendment rights. The Court cannot say that the two claims are the same for purposes of claim preclusion as a matter of law, at least not on the present record. The Board may, if it wishes, renew its claim preclusion argument at the summary judgment stage of the case, but if it does so, it should support the argument with a more complete discussion of the law regarding the identity of claims and of the facts regarding the claims made in Melvin's two lawsuits.

In their motion, the individual defendants have done what the Board did not do: they have discussed the applicable law. In *Charlie F. v. Bd. of Educ. of Skokie Sch. Dist. 68*, 98 F.3d 989 (7th Cir. 1996), a case cited (but not discussed) by the Board, but only in its reply brief when Mosely had no chance to respond, the Seventh Circuit ruled that when a party seeks in a claim under some other statute, including § 1983, relief for a state of affairs that is actionable under the IDEA, he must exhaust administrative remedies, consistent with IDEA's requirements. *Id.* at 992-93. To put it another way, "parents [cannot] opt out of the IDEA by proclaiming that it does not offer them anything they value" or by claiming only damages. *Id.* at 993. If "the genesis and the manifestations of the problem are educational" and of the type covered by the IDEA, then the claim amounts to a claim for relief available under the IDEA. *Id.*

The IDEA guarantees to a child with a disability the right to a free appropriate public education in the least restrictive environment. The child's home school district is required to

assess the child's educational needs and address those needs through an individualized education program. 20 U.S.C. § 1414(a)-(d). The statute also requires local school districts to establish and maintain procedures to ensure that children with disabilities and their parents are guaranteed procedural safeguards with respect to the provision of free appropriate public education. *Id.* § 1415(a). These procedures include written prior notice whenever the school district proposes to initiate or change the child's educational placement. *Id.* § 1415(b).

It is less than crystal clear from Mosely's amended complaint whether she contends that Melvin has a disability within the meaning of the IDEA, or alternatively that he was inappropriately categorized as such by the Board. The language she uses, however – including the terms "individual educational plan (IEP)" and "free and appropriate education in a suitable environment," Am. Compl. ¶¶ 60 & 63 – are IDEA-esque lingo. This, together with the fact that Mosely squarely alleged in her earlier lawsuit filed on Melvin's behalf that the Board had violated the IDEA, strongly indicates that Mosely is, in fact, complaining that Melvin was treated in a way that the IDEA does not permit, even though she casts her claims as First Amendment retaliation and state tort claims. For this reason, the Court is constrained to conclude, based on the *Charlie F.* case, that Mosely is seeking relief available under the IDEA and that, as a result, her claims are subject to that statute's administrative exhaustion requirement. Because Mosely does not dispute that Judge Conlon's ruling on the exhaustion issue is binding on her, dismissal of her claims on Melvin's behalf is required.[3]

---

[3] If Mosely believes that the Court has misunderstood her claims on Melvin's behalf, she can and should seek reconsideration of the Court's ruling in this regard.

## Conclusion

For the reasons stated above, the Court grants defendants' motions to dismiss in part and denies them in part [docket nos. 64, 66 & 67]. The Court dismisses the claims in plaintiff's amended complaint made on behalf of Melvin Jackson but denies defendant's motion as to the claims made on plaintiff's own behalf. The individual defendants are directed to answer those claims by no later than April 11, 2008. The claims against the City of Chicago are dismissed without prejudice pursuant to Federal Rule of Civil Procedure 4(m). The status hearing set for March 24, 2008 is vacated and reset to April 17, 2008 at 9:30 a.m., for the purpose of setting a discovery schedule. Counsel are directed to confer prior to the date of the status hearing so that they can propose an appropriate schedule to the Court.

_____
MATTHEW F. KENNELLY
United States District Judge

Date:   March 21, 2008